IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X
FRANKLIN GRULLON,                               :
                                                :
                    Petitioner,                 :
                                                :       94 Cr. 466 (JFK)
        -against-                               :       99 Civ. 1877 (JFK)
                                                :
UNITED STATES OF AMERICA,                       :
                                                :
                    Respondent,                 :
------------------------------------------------X

RECEIVED APR 25 2012 JUDGE KEENAN'S CHAMBERS

## RULE 60 MOTION FOR RELIEF FROM JUDGMENT

**TO THE HONORABLE COURT:**

**NOW COMES, FRANKLIN GRULLON,** (herein referred to as "Petitioner"), and would respectfully show this Honorable Court the following:

Pursuant to Federal Rules Civil Procedure, Rule 60(b), (5) and (6), Petitioner files this Rule 60 Motion for Relief from Judgment. Petitioner hereby seeks the relief of vacating this Court's previous judgment, dated January 16, 2001, in favor of respondent in this cause on the ground it is no longer just or equitable to give it prospective application. Petitioner also requests the instant indictment against him be dismissed with prejudice for the following reasons:

1

## FACTUAL HISTORY AND PROCEDURAL BACKGROUND

On January 16, 2001, this Court issued a ruling denying petitioner's petition to vacate or set aside his conviction and sentence pursuant to § 2255. At page 18 of the decision the district court acknowledged Grullon claimed that his attorney Sternheim **"told him that he might not be deported because of his many years of residence in the United States."** The district court, however, denied this claim under the basis that **"Irrespective of what Sternheim allegedly told Grullon, his argument fails because deportation is only a collateral consequence of his plea."**

The January 16, 2001 ruling must be reversed in light of the recent Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. ___ (March 31, 2010. In *Padilla*, the Court held that, in light of the severity of deportation and the reality that immigration consequences of criminal convictions are inextricably linked to the criminal proceedings, **the Sixth Amendment requires defense counsel to provide affirmative, competent advice to a noncitizen defendant regarding the immigration consequences of a guilty plea, and, absent such advice, a noncitizen may raise a claim of ineffective assistance of counsel.**

In *Padilla v. Kentucky*, the petitioner was a lawful permanent resident immigrant who faced deportation after pleading guilty in a Kentucky court to the transportation of a

2

large amount of marijuana in his tractor-trailer. In a post-conviction proceeding, <u>Mr. Padilla</u> claimed that his counsel not only failed to advise him of this consequence prior to his entering the plea, but also **"told him that he did not have to worry about immigration status since he had been in the country so long."** <u>Mr. Padilla</u> stated that he relied on his counsel's erroneous advice when he pleaded guilty to the drug charges that made his deportation virtually mandatory.

The Kentucky Supreme Court denied <u>Mr. Padilla</u> post conviction relief based on a holding that the Sixth Amendment's guarantee of effective assistance of counsel does not protect a criminal defendant from erroneous advice about deportation because it is merely a "collateral" consequence of his conviction. The U.S. Supreme Court disagreed with the Kentucky Supreme Court and agreed with <u>Mr. Padilla</u> that "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." <u>Padilla</u>, slip op. at 2. The Court observed that "[t]he landscape of federal immigration law has changed dramatically over the last 90 years." <u>Id</u>. at 2. The Court stated: While once there was only a narrow class of deportable offenses and judges wielded broad discretionary authority to prevent deportation, immigration reforms over time have expanded the class of deportable offenses and limited the authority of judges to alleviate the harsh consequences of deportation. The "drastic measure" of deportation or removal . . . is now virtually inevitable for a vast

3

number of non citizens convicted of crimes. *Id.* at 2 (citations omitted). Based on these changes, the Court concluded that "accurate legal advice for non citizens accused of crimes has never been more important" and that "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* at 6. In *Mr. Padilla's* case, the Court found that the removal consequences for his conviction were clear, and that he had sufficiently alleged constitutional deficiency to satisfy the first prong of the *Strickland* test – that his representation had fallen below an "objective standard of reasonableness."

In the leading case, same as in *Padilla's*, the petitioner was a lawful permanent resident who faced deportation after pleading guilty. In his Section 2255 motion, petitioner claimed that prior to pleading guilty he had told his attorney Sternheim that he was not going to plea guilty if he was going to be deported from this country because his whole family which included his wife and kids are in the United States; that his attorney Sternheim told him to plea guilty because he might not be deported because of his many years of residence in the United States; that recently he found out that because of his charges he may be deported back to his country; that he did not agree with that decision; that prior to pleading guilty, on August 29, 1995, he had met with Special Agent Robert Patterson at the U.S. Marshal Holding cells at which he told Patterson that he would

consider to plea guilty to a five year plea but **"he will not take the plea if he was going to be deported to his country."**[1]

Petitioner's attorney, Ms. Sternheim, did not oppose petitioner's claim that she misinformed him about the deportation consequences he faced by pleading guilty despite she was properly served by petitioner with a copy of his Section 2255 motion [and in all his papers to the court in support of his motion to withdraw his guilty plea] in which he challenged his conviction. On January 16, 2001, however, the district court issued a decision denying petitioner's claim under the basis that **"Irrespective of what Sternheim allegedly told petitioner, his argument fails because deportation is only a collateral consequence of his plea."** The district court also ruled that petitioner's guilty plea was valid even if he had never known that it could result in his deportation. Petitioner's sentence expired on December 18, 2000. Upon completion of his full sentence the Immigration Customs Enforcement took him into custody and detained him without bond for a consecutive period of six years until petitioner was deported and removed from the Untied States on September 6, 2006 after he exhausted all his remedies to remain in the United States with his family, a clear proof petitioner would have never

---

[1] It should be noted that even the government offered evidence that corroborated petitioner's deportation claim. For example, on July 8, 1996, the prosecutor on petitioner's case, Assistant U.S. Attorney Michael A. Rogoff, submitted a sworn affidavit in which, at page 2, par. 5, he stated that during the jury selection process of petitioner's case his attorney, Bobbi Sternheim, Esq., told him and AUSA Goldston several times that petitioner was interested in pleading guilty, but that he would not plead guilty to a ten-year statutory maximum and was **"extremely concerned about being deported following a conviction."**

5

pled guilty had he been told he would be deported as consequence of the judgment he seeks vacated here.

When considering a motion pursuant to Fed. R. Civ. P. 60(b), the "threshold issue" is whether the factual landscape has changed since the court's previous decision. *Agostini v. Felton*, 521 U.S. 203 (1997). Factual matters should be decided by the trial court. On this case, however, the district court denied petitioner an evidentiary hearing on his deportation claim. Accordingly, petitioner hereby requests an evidentiary hearing and oral argument before the court in order to present the evidence and legal authorities now available to the Court.

## CASE LAW AND AUTHORITIES

Federal Rules of Civil Procedure 60(b)(5) and (6) provide:

> "(b) On motion and upon such terms as are just, the court may relieve a party or party's legal representative from a final judgment, order or proceedings for the following reasons:. . . or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is <u>no longer equitable</u> that the judgment should have prospective application; or (6) any other reasons justifying relief from the operation of the judgment." [Emphasis added.]

The primary United States Supreme Court opinion which determines the proper legal standard for a court to follow when considering a motion pursuant to Fed. R. Civ. P. 60(b) is *Agostini v. Felton*.[2] In *Agostini*, twelve years after the Supreme Court held in

---

[2] *Id.*

*Aguilar v. Felton*, 473 U.S. 402 (1985), that Establishment Clause barred the New York City Board of Education from sending public school teachers into parochial schools, the Board and parochial school children's parents filed a motion under Fed. R. Civ. P. 60(b)(5) seeking relief from the permanent injunction entered by the Court in 1985. The Court found that a motion pursuant to Fed. R. Civ. P. 60(b) was procedurally sound and the appropriate vehicle for the parties to seek relief from a prior ruling of the Court.[3] The Court also found that the doctrines of *stare decisis* and the law of the case "…do(es) not preclude us from recognizing the change in our law and overruling *Aguilar* and those portions of *Ball* inconsistent with our more recent decisions."[4] This doctrine does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'"[5] Accordingly, under both Fed. R. Civ. P. 60(b) and *Agostini*, petitioner hereby requests that the prior ruling of the Court in this cause be vacated.

When considering Fed. R. Civ. P. 60(b) motion, the Court determined in *Agostini* that the threshold issue to be decided is "whether the factual or legal landscape has changed since…[the prior ruling of the Court]."[6] In *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992), the Supreme Court held that it is appropriate to grant a Fed. R. Civ. P. 60(b) motion when the parties seeking relief can show, "a significant

---
[3] 521 U.S. at 214.
[4] *Agostini*, 521 U.S. 203; *School District of Grand Rapids v. Ball*, 473 U.S. 373 (1985)(the companion case to *Agostini*).
[5] 521 U.S. at 236.
[6] 52 U.S. at 216.

7

change in either factual conditions or in law. 'A Court may recognize subsequent changes in either statutory or decision law.'" "The Court cannot be required to disregard significant changes in law or facts if it is satisfied that what it has been doing has been turned through changed circumstances into as instrument of wrong."[7] Either a change in law or factual circumstances is sufficient by itself.[8] Both need not be proven.

In the leading case, there have been significant changes in both factual circumstances and law since the January 16, 2001 prior ruling of this Court. New factual and legal evidence since this Court's decision, as presented herein, in the Brief in Support of this motion (incorporated herein by reference), and as will be presented to the Court at the evidentiary hearing requested by petitioner, now establishes that petitioner has become an "instrument of wrong."[9] Accordingly, under Fed. R. Civ. P. 60(b) and current United States Supreme Court case law [Padilla v. Kentucky] cited herein, it is no longer just or equitable to give this Court's previous January 16, 2001 decision prospective application.

## CHANGES IN LAW

---

[7] *Railway Employees v. Wright*, 364 U.S. 642, 647 (1961).
[8] 521 U.S. at 214.
[9] See *Railway Employees v. Wright*, 364 U.S. 642 (1961).

There have been significant changes in both decisional laws since the Court's original ruling in this case. This Court in the original cause of action ruled that **"Irrespective of what Sternheim allegedly told petitioner, his argument fails because deportation is only a collateral consequence of his plea."** In *Padilla*, the Supreme Court held Sixth Amendment requires affirmative advice regarding immigration consequences. It made this clear by rejecting the position of amicus United States that *Strickland* only applies to claims of misadvice, stating that "there is no relevant difference 'between an act of commission and an act of omission' in this context." *Id.* at 13 (citing *Strickland*, 466 U.S. at 690). The Court explained: A holding limited to affirmative misadvice . . . would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available. Silence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of "the advantages and disadvantages of a plea agreement." . . . When attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all. *Id.* (citations omitted).

Besides the Supreme Court decision in *Padilla* this Court's January 16, 2001 ruling must also be vacated under the Second Circuit decision in *United States v. Couto*, 311 F.3d 179 (2nd Cir. 2002), in which the Second Circuit held that ineffective assistance of counsel rendered a guilty plea invalid because counsel affirmatively misrepresented to

9

the defendant the deportation consequences of pleading guilty. In this case, the Court acknowledged petitioner claimed his attorney Sternheim **"told him that he might not be deported because of his many years of residence in the United States."** Instead of conducting an evidentiary hearing to afford Sternheim and the government an opportunity to respond to petitioner's claim, the Court denied petitioner's 2255 without a hearing under the basis that **"Irrespective of what Sternheim allegedly told petitioner, his argument fails because deportation is only a collateral consequence of his plea."** Pursuant to *Couto* and *Padilla* this Court's prior ruling must be vacated and petitioner's case remanded for a new trial.

## FACTUAL CHANGES

In addition to the significant changes in the law since the original ruling of the Court in this cause, there have also been dramatic changes in factual circumstances and available scientific knowledge. Subsequent facts reveal in this Motion (in the Brief in Support of this Motion, and which will be revealed in full detail at the evidentiary hearing requested herein) demonstrate that petitioner is not guilty of the crimes for which he was coerced into pleading guilty and of those crimes for which he was originally charged with his co-defendants in the instant matter.

The evidence submitted by petitioner on his affidavit made available here, affidavits of petitioner's codefendants, the Brief in Support of this Motion, and the new factual evidence and testimony previously unavailable to the Court that will be presented at the evidentiary hearing requested herein reveal petitioner's offense for which he pled guilty was manufactured by the government.

In light of these new facts, and others, that were not known or anticipated by the Court at the time of its original ruling, the prospective application of the decisions in *Padilla* and *Couto* would be inherently unjust. It is just that the Court's judgment be vacated.

## THE GOVERNMENT WILL NOT BE PREJUDICED BY THE GRANTING OF THIS MOTION

The petitioner also asserts that the government will not be prejudiced by the Court's judgment vacating his conviction. In the present situation the government has never offered evidence to establish petitioner was in fact guilty of the offenses for which he was coerced into pleading guilty by his attorney, and, as demonstrated above petitioner's claim that he was misinformed by his attorney with regard to the deportation consequences that he faced has never been challenged by his attorney. Moreover, the government cannot claim it will be prejudiced if petitioner is afforded a new trial on this case given the fact that it has never offered evidence linking petitioner to the crimes for

11

which he was arrested, charged, and indicted on the 86 counts indictment filed by the government against him. Petitioner was charged as member of a Rico enterprise with committing numerous robberies in which not one person and/or victim identified petitioner during the commission of the robberies. Finally, as will be demonstrated in an evidentiary hearing petitioner's codefendants, including the evidence pertaining to the victims and from the same cooperating witnesses on this case will proof petitioner is wrongfully accused by the government on the indictment that is the subject of this case.

## PETITIONER'S REMOVAL FROM THE US DOES NOT RENDER THE MOTION UNDER RULE 60 MOOT

As explained above, on September 6, 2006, petitioner was removed from the United States as a result of the conviction vacated here. Merely because petitioner was removed from the US does not necessarily render the proceedings of the motion under Rule 60 moot. As long as petitioner may demonstrate that (a) there still an issue of controversy in dispute, (b) that he may continue to prosecute his case from oversee, and (c) that he will not be a government burden, the proceedings cannot be moot for his removal. In the present situation there is obvious an issue of controversy that requires further review because petitioner cannot reenter the country as a result of a removal order that it is clearly invalid for the reasons mentioned above.

When reviewing this issue, the Court should have in consideration, first, an issue of controversy exist because petitioner cannot enter the US as a result of his conviction. Had petitioner not been misinformed by his attorney he would have not pled guilty and would have instead elected to proceed with his trial. Second, petitioner, although he was removed from the US he has the same address in the court's file when he was arrested on this case. Any correspondence concerning this case from both the Court and the government may still be served directly upon him at that address. And, third, the petitioner will not be a government burden in the event an evidentiary hearing is granted on this case as he will make all payments necessary in connection with any proceedings he will institute with the US embassy in Santo Domingo to secure a visa to travel to the US for his hearing. The petitioner will also pay for his flight tickets and will be responsible for any expenses that he may incur during his stay in the US while his case is pending before the Court.

In addition to above stated presentation, the petitioner submits that his removal to his native country does not moot this motion under Rule 60 because the Immigration and Nationality Act ("INA") § 242 does not contain a bar against judicial review if an alien leaves the country, unlike former review provisions. See *Generally* INA § 242(d), 8 U.S.C. § 1252(d); see also *United States v. Garcia-Echaverria*, 347 F.3d 440, 447 (6th Cir. 2004) (citation omitted); *Amanfi v. Aschroft*, 328 F.3d 719, 725 n.1 (3rd Cir. 2003);

*Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1116, 1170-71 (9th Cir. 2003); *Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2002); see also *Reno v. American-Arab Anti-Discrimination Committee, et al.*, 525 U.S. 471, 491 (1999).

The petitioner also submits that a case becomes moot if, at any stage of the proceedings, it fails to satisfy the case-or-controversy requirement of Article III, Section 2, of the Constitution. See *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); accord *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 51 (2d Cir.2004); *Swaby v. Ashcroft*, 357 F.3d 156, 159-60 (2d Cir.2004). Where a petitioner challenging an order of removal has been deported from the United States, he "must show some 'collateral consequence' . meaning 'some concrete and continuing injury other than the now-ended [threat of removal]' to establish a live case or controversy." *Swaby v. Ashcroft*, 357 F.3d at 160 (quoting *Spencer v. Kemna*, 523 U.S. at 7). The Court should conclude that petitioner satisfies this requirement because a collateral consequence of his removal for an aggravated felony conviction is "a lifetime bar from reentering the United States."

## **PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Petitioner Franklin Grullon respectfully prays for the following relief:

a. an evidentiary hearing and oral argument before this Court;

b. an order by the Court that the judgment heretofore entered in favor of respondent on January 16, 2001 denying petitioner's Section 2255 motion is vacated in light of changed law and factual conditions because it is no longer just or equitable to give it prospective application;

c. an order by the District Court dismissing petitioner's case with prejudice; and

d. such other and further relief as this Honorable Court may deem just proper.

Dated: April 23, 2012

Respectfully submitted,

*/s/ Franklin Grullon*

**FRANKLIN GRULLON**