```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                              :
FRANKLIN GRULLON,             :
                              :
            Petitioner,       :      12 Civ. 4086 (JFK)
                              :      94 Cr. 466 (JFK)
      - against -             :
                              :
UNITED STATES OF AMERICA,     :
                              :
            Respondent.       :
- - - - - - - - - - - - - - - x
```

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO PETITION FOR WRIT OF ERROR <u>CORAM NOBIS</u>**

Preet Bharara
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Alvin Bragg
Assistant United States Attorney
      -Of Counsel-

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..........................................1

BACKGROUND.....................................................2

    A.   The Offense Conduct ................................2

    B.   Grullon's Guilty Plea .............................3

    C.   Grullon's Post-Plea Litigation And Sentencing ......5

    D.   The Court's 2001 And 2004 Decisions ...............7

    E.   The Petition ......................................9

ARGUMENT......................................................10

I.  Grullon Has Failed To Demonstrate That He Received
Ineffective Assistance Or That He Suffered Prejudice
From The Alleged Ineffective Assistance ................12

    A.   Applicable Law ....................................12

    B.   Grullon Has Failed To Establish That He Received
Ineffective Assistance Of Counsel ................13

    C.   Grullon Suffered No Prejudice From The Alleged
Ineffective Assistance ...........................14

II.  The Padilla Decision Announced A New Rule That Does Not
Apply To Grullon's Case ................................16

    A.   The Padilla Rule is a New Rule ...................16

    B.   Padilla's New Rule is Not Retroactive ............19

CONCLUSION ...................................................21

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the petition of Franklin Grullon ("Grullon" or the "Petitioner") seeking to vacate his conviction because he supposedly received ineffective assistance of counsel concerning the immigration consequences of his guilty plea in 1995.[1]  The Court previously rejected this claim in 2004.  Grullon offers no new evidence about his lawyer's conduct.  Rather, he argues that the Supreme Court's decision in Padilla v. Kentucky, 130 S.Ct. 1473 (2010), which now requires defense lawyers to advise clients about the immigration consequences of a guilty plea, should apply to his plea proceeding, which took place in 1995.

The Court should deny Grullon's petition because: (1) as the Court previously ruled, there is no evidence that Grullon's attorney did not meet the prevailing professional norms for effective assistance of counsel in 1995; (2) Grullon's repeated admissions of guilt make clear that he did not suffer prejudice as a result of his counsel's alleged ineffectiveness; and (3) the Padilla decision announced a new rule that should not be applied retrospectively to Grullon's case.

---

[1] The Petitioner sought relief under Rule 60 of the Federal Rules of Civil Procedure.  In an Order, dated June 4, 2012, the Court construed the motion as a petition for a writ of error coram nobis, because Grullon served his sentence and has been deported.

## BACKGROUND

### A.    The Offense Conduct

Grullon initially was charged in two cases for two separate schemes.  In the first case, Grullon was charged with violating provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  These charges arose from Grullon's involvement with a gang whose members engaged in murder, robbery, assault, extortion, and other acts of violence and drug trafficking. (Presentence Investigation Report, United States v. Franklin Grullon, S14 94 Cr. 466 (JFK) (the "PSR") ¶¶ 2, 51, 59.)[2]  The operative indictment alleged that Grullon committed and conspired to commit six armed robberies of retail businesses. (PSR at 4.)  Grullon faced more than 100 years' imprisonment based on these charges.  See Grullon v. United States, No. 99 Civ. 1877 (JFK), 2004 WL 1900340, *1 (S.D.N.Y. Aug. 24, 2004).

In the second case, which was before United States District Judge Robert W. Sweet, Grullon was charged with one count of conspiracy to sell cocaine.  This charge arose from Grullon's operation of a livery car service that delivered cocaine to its customers.  (PSR ¶¶ 60 – 62.)  Undercover federal agents purchased cocaine from the livery car service on 14 occasions.

---

[2]For the convenience of the Court, the PSR is attached hereto as Exhibit A.  It is not included in the version of this memorandum that is being filed by ECF.

(PSR ¶ 62.)  According to the PSR, the estimated amount of cocaine distributed by Grullon's livery service was between five and 15 kilograms of cocaine from December 1993 to July 1994. (Id.)

**B.   Grullon's Guilty Plea**

In August 1995, a superseding information was filed that charged Grullon with one count of conspiracy to commit robbery involving an assault with a dangerous weapon, in violation of 18 U.S.C. Section 1959(a)(6), and one count of using a telephone in connection with the distribution of cocaine, in violation of 21 U.S.C. Section 843(b).  Grullon pled guilty to this indictment pursuant to a plea agreement with the Government.  The agreement provided that by pleading guilty to the superseding information, Grullon would be resolving both pending cases against him.  (Aug. 29, 1995 Ltr. to Bobbi Sternheim from the United States Attorney's Office (attached as Ex. B) at 2.)  The plea agreement stipulated that the offense level was 31 and that Grullon was in Criminal History Category I.  (Id. at 2-3.)  It also stipulated that, based upon his offense level and his Criminal History Category, Grullon's Guidelines range would be 108 to 135 months' imprisonment.  (Id. at 3.)  However, because the statutory maximums for the charges amounted to seven years' imprisonment, the plea agreement

3

specified a stipulated sentencing range of seven years.  (Id.)

The plea agreement did not address any possible immigration

consequences of pleading guilty to the charges in the

superseding information.

During Grullon's plea allocution, he unequivocally admitted

the charged conduct as follows:

> It was in May, 1993.  I was an associate of an
> organization known as Tito's Gang which committed
> robberies.  At that time I agreed with another member
> of Tito's Gang to rob Cars & Credit, a used car
> business in the Bronx.  We agreed that during the
> course of the robbery we will [sic] display guns in
> order to cause the person at the business to give us
> the money.  I did this to maintain my position in
> Tito's Gang.
>
> In 1994, I used a telephone in the Bronx to talk to
> people in order to sell quantities of cocaine.

(Plea Tr., Aug. 30, 1995, at 13-14 (Attached as Exhibit C).)

The Court further inquired whether the people that Grullon

talked to on the telephone "were actually engaged in the

distribution of cocaine" and Grullon responded in the

affirmative.  Id. at 14.  The possible immigration consequences

of pleading guilty were not raised during the plea proceeding.

4

**C.    Grullon's Post-Plea Litigation and Sentencing**

On December 8, 1995, more than three months after his guilty plea, Grullon filed a <u>pro se</u> application to replace his lawyer, Bobbi Sternheim, and to withdraw his guilty plea.  See <u>United States</u> v. <u>Grullon</u>, No. S14 94 Cr. 466 (JFK), 1996 WL 437956 (S.D.N.Y. Aug. 5, 1996).  Grullon claimed that Sternheim had pressured him into pleading guilty and that she had provided him with constitutionally ineffective assistance.  <u>Id.</u> at *3. The Court held a conference and "with great reluctance" relieved Sternheim and appointed Anthony Ricco to represent Grullon.  <u>Id.</u> Ricco subsequently filed a motion to withdraw Grullon's guilty plea.  <u>Id.</u>  Without court permission, Grullon made "copious submissions of his own in support" of the motion, and, in his submissions, attacked both Sternheim and Ricco.  <u>Id.</u>  The Court held that Grullon's claims that he was "not guilty" and that Sternheim pressured him to plead guilty were belied by the record and that Grullon's claim that Sternheim was ineffective was "completely baseless."  <u>Id.</u> at *5 - * 6.  The Court specifically noted that Sternheim had negotiated a very favorable plea agreement with the Government:  "That she was able to broker an agreement with the Government reducing Grullon's sentencing exposure from 100 plus years' imprisonment he faced if convicted to 7 years' imprisonment itself speaks

5

volumes about the effectiveness of  Ms. Sternheim's advocacy."
Id. at *6.

　　The Court also addressed Grullon's claims that a federal
agent had pressured Grullon to plead guilty to crimes he did not
commit.  These claims were belied by Grullon's attempts to
assist the Government and the agent after his plea, as set forth
in affidavits submitted by the agent and an Assistant United
States Attorney.  Id.  During a proffer session about a month
after Grullon pled guilty, Grullon admitted to committing many
robberies with certain of his co-defendants and informed the
Government that he had guns at his mother's apartment.  Id.
Subsequently, the agent recovered from the apartment three guns,
including a machine gun, and a silencer.  Id.

　　Upon Grullon's request to discharge Ricco, the Court held a
conference at which Ricco was relieved and Marvin Schechter was
appointed to represent Grullon.  Grullon subsequently moved for
a declaration that Ricco had rendered ineffective assistance for
failing to persuade the Court that Sternheim had been
ineffective.  See United States v. Franklin Grullon, No. S14 94
Cr. 466 (JFK), 1996 WL 721084 (S.D.N.Y. Dec. 13, 1996).  The
Court denied the motion.  Id. at *2  (Grullon's motion to
withdraw his plea "was doomed to failure and a turning into
flesh and blood of fictitional advocates, Portia and Perry

6

Mason, or a reincarnation of real-life advocates, Daniel
Webster, Clarence Darrow, John W. Davis and Edward Bennett
Williams, each working on [Grullon's] behalf individually or
collectively would not have achieved a different result for the
defendant.").

On December 18, 1996, the Court sentenced Grullon to seven
years' imprisonment.[3]  (Sentencing Tr., Dec. 18, 1996 (Attached
as Ex. D).)

**D.   The Court's 2001 and 2004 Decisions**

In November 1998, Grullon submitted a motion to vacate his
conviction pursuant to 28 U.S.C. Section 2255 and a motion
requesting the Court to recuse itself from considering the
petition.  The Court denied both motions.  See Grullon v. United
States, 94. Cr. 466 (JFK), 99 Civ. 1877 (JFK), 2001 WL 43603
(S.D.N.Y. Jan. 17, 2001).  Among several other issues, Grullon
argued that his plea was invalid, because he had not been
advised that his conviction could result in his deportation.
Specifically, Grullon claimed that Sternheim told him that he
might not be deported because he had resided in the United
States for many years.  Id. at *8.  The Court held that

---

[3] Grullon appealed the denial of his motions to withdraw his
guilty plea and the Second Circuit affirmed this Court's
decisions.  See United States v. Torres, 129 F.3d 710, 716 (2d
Cir. 1997) ("Even if counsel's performance were unreasonably
deficient, Grullon has offered no evidence that, but for
counsel's deficiency, the result would have been different.").

"[i]rrespective of what Sternheim allegedly told Grullon, his argument fails because deportation is only a collateral consequence of his plea." Id.

In October 2003, Grullon filed a motion, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, seeking to vacate his convictions and to dismiss the indictment against him. The Court denied the motion. Among other issues, Grullon claimed that Sternheim provided him ineffective assistance, because she "coerced him into pleading guilty" and "she failed to inform him that deportation was a possible consequence of his pleading guilty." Grullon, 2004 WL 1900340 at *6.

The Court held that Grullon failed to meet either part of the two-pronged standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, Grullon failed to show that Stenheim's representation "fell below an objective standard of reasonableness measured by the prevailing professional norms." Grullon, 2004 WL 1900340 at *6 (quoting United States v. Gordon, 156 F.3d 376, 379 (2d Cir. 1998) (per curiam)). The Court held that Sternheim was not required, under the Second Circuit law at that time, to inform Grullon of the possibility of deportation. The only requirement was that counsel not affirmatively misrepresent the consequences of pleading guilty. Id. (citing United States v. Couto, 311 F.3d 179 (2d Cir. 2002)). The Court

8

noted that Grullon had not supplied any evidence, as required by Second Circuit case law, to "support his self-serving testimony of ineffective assistance of counsel," and specifically held that there was "no evidence that Grullon's attorney affirmatively misrepresented to him the consequences of pleading guilty." Id. at *7.

Second, the Court held that "Sternheim's alleged failure to inform did not indicate prejudice." Id. The Court stated that "the plea agreement which she brokered indicates her effectiveness," noting that the "agreement substantially decreased Grullon's potential time in prison by up to 1,116 months." Id. at *7.

### E. The Petition

The instant petition requests that the judgment against Grullon be set aside and the indictment be dismissed. Grullon argues that the Court's denial of his Section 2255 petition must be reversed under the Supreme Court's decision in Padilla. In Padilla, the Supreme Court ruled that a defense attorney is required to provide affirmative advice to a noncitizen defendant about the immigration consequences of a guilty plea. According to Grullon, the Supreme Court's decision in 2010 means that Sternheim rendered ineffective assistance in

9

1995 by not advising Grullon about the immigration consequences of his plea.

Notwithstanding his guilty plea allocution and his additional admissions about robberies in his post-plea proffer, Grullon also continues to claim that he is innocent.  (Rule 60 Motion For Relief From Judgment ("Pet. Mot.") at 10.)  Based only upon bald self-serving assertions, Grullon claims that there is new evidence of his innocence and that such alleged new evidence would make a decision by this Court that <u>Padilla</u> only applies prospectively "inherently unjust." (<u>Id.</u> at 11.)

Finally, Grullon claims that the Government would not suffer any prejudice from having a trial now (more than fifteen years after his guilty plea) and that his deportation does not render his motion moot.  (Pet. Mot. at 11 – 14.)

<b><u>ARGUMENT</u></b>

The writ of error <u>coram</u> <u>nobis</u> is an "extraordinary remedy" that is available "only under circumstances compelling such action to achieve justice."  <u>United States</u> v. <u>Morgan</u>, 346 U.S. 502, 511 (1954); <u>accord</u> <u>United States</u> v. <u>Denedo</u>, 129 S. Ct. 2213, 2224 (2009).  The writ is not a "substitute for appeal, and relief under the writ is strictly limited to those cases in which errors . . . of the most fundamental character have rendered the proceeding itself irregular and invalid."  <u>Foont</u> v.

10

United States, 93 F.3d 76, 78 (2d Cir. 1996) (internal
quotations and citations omitted).  To obtain relief, a
petitioner bears the burden of "demonstrate[ing] that (1) there
are circumstances compelling such action to achieve justice;
(2) sound reasons exist for failure to seek appropriate earlier
relief; and (3) the petitioner continues to suffer legal
consequences from his conviction that may be remedied by
granting of the writ."  Foont, 93 F.3d at 79 (internal
quotations, citations and alterations omitted).

Here, the Court need not look further than the first
requirement.  Grullon has failed to show any circumstances
compelling this Court to act to achieve justice.  Justice was
done.  First, as the Court previously held, there is no support
for the conclusion that Grullon received ineffective assistance
of counsel under the prevailing professional norms in 1995.
Second, even if Grullon had received ineffective assistance, he
cannot demonstrate any prejudice arising from the alleged
ineffective assistance.  He received an extremely favorable plea
offer.  Had he turned down this offer, he still would have been
deported, but only after being convicted at trial for additional
criminal conduct and after likely having served a far longer
jail term.  Third, the Padilla decision is a new, prospective
rule that does not require the Court to overturn its prior

11

ruling that Grullon failed to show that he received ineffective assistance of counsel.

## I.  Grullon Has Failed To Demonstrate That He Received Ineffective Assistance Or That He Suffered Prejudice From The Alleged Ineffective Assistance

Grullon has fallen far short of making the required showings that he received ineffective assistance of counsel in connection with entering his guilty plea or that he suffered prejudice from the alleged ineffective assistance of counsel.

### A.  Applicable Law

The general standard for ineffective assistance claims is well established:  To prevail, a petitioner must (1) demonstrate that his counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice" from the alleged dereliction in counsel's performance. Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984). Generally speaking, to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In the context of a guilty plea, it is well established that <u>Strickland</u>'s "prejudice" prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u> v. <u>Lockhart</u>, 474 U.S. 52, 59 (1985); <u>accord</u> <u>Premo</u> v. <u>Moore</u>, 131 S. Ct. 733, 745 (2011).  It is "often quite difficult for petitioners who have acknowledged their guilt" to satisfy this standard.  <u>Padilla</u>, 130 S. Ct. at 1485 n.12.  Among other things, such a petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." <u>Id.</u> at 1485.

**B.    Grullon Has Failed To Establish That He Received Ineffective Assistance Of Counsel**

The Court's decision in 2004 held that Grullon failed to establish that Stenheim's representation "fell below an objective standard of reasonableness measured by the prevailing professional norms." <u>Grullon</u>, 2004 WL 1900340 at *6 (quoting <u>United States</u> v. <u>Gordon</u>, 156 F.3d 376, 379 (2d Cir. 1998) (<u>per curiam</u>)).  As the Court found, Sternheim was not required, under the Second Circuit law at that time, to inform Grullon of the possibility of deportation.  While Grullon claimed that Sternheim affirmatively misrepresented the consequences of

13

pleading guilty by stating that he might not be deported, the
Court made clear that Grullon's self-serving assertions that
Sternheim made such a statement were altogether insufficient.
Id. at *6 - *7 (in "the Second Circuit, it is established that
the failure of the petitioner to submit an affidavit from
counsel corroborating an ineffective assistance of counsel claim
provides sufficient justification to dismiss a petition to
vacate a guilty plea."); see also Matos v. United States, --
F.Supp.2d--, No. 99 Cr. 137 (WHP), 2012 WL 569360, *4 (S.D.N.Y.
Feb. 16, 2012) (emphasizing the "self-serving" and
unsubstantiated nature of petitioner's allegations in holding
that they lack merit and credibility).

The Court's prior ruling was correct and should not be
disturbed.

## C.   Grullon Suffered No Prejudice From The Alleged Ineffective Assistance

Grullon also suffered no prejudice from Sternheim's
alleged ineffective assistance of counsel.  Grullon claims that
"[h]ad [he] not been misinformed by his attorney he would not
have pled guilty and would have instead elected to proceed with
his trial." (Pet. Mot. at 13.)  Grullon's self-serving claim is
insufficient.  The relevant issue is whether it would have been
rational for Grullon to have proceeded to trial rather than

14

pleading guilty.  See Padilla, 130 S. Ct. at 1485.  Here, as the
Court previously put it, Grullon's plea "agreement substantially
decreased Grullon's potential time in prison by up to 1,116
months."  Id. at *7.  Given Grullon's admissions during his plea
allocution and his post-plea proffer, Grullon is in no position
to deny that had he proceeded to trial, he would have been in a
far worse place: convicted of additional and very serious
charges and still subject to deportation.  See Padilla, 130 S.
Ct. at 1485 n.12. (it is "often quite difficult for petitioners
who have acknowledged their guilt" to demonstrate that they
suffered prejudice); Hernandez v. United States, No. 07 Civ.
4593 (RWS), 2008 WL 1859600, at *5 (S.D.N.Y. Apr. 24, 2008)
(rejecting ineffective assistance claim because, among other
reasons, "other than the unsupported claim that [the petitioner]
had an unspecified 'viable defense to the offense charged,'
. . . [he] does not contend that the Government would have
failed to convict him at trial"); see also Matos, 2012 WL
569360, at *4 ("A conviction after trial would, in all
likelihood, ensure that [the petitioner] was imprisoned for a
significant term of incarceration before facing the same
immigration consequences.  Given these circumstances, it would
have been irrational for [the petitioner] to proceed to
trial.").

15

## II.  The __Padilla__ Decision Announced A New Rule That Does Not Apply to Grullon's Case

Given that Grullon has failed to demonstrate that he suffered prejudice from his counsel's alleged ineffective assistance, the Court need not reach the issue of whether the __Padilla__ decision applied to his case.  If the Court chooses to address this issue, for the reasons discussed below, it should conclude that __Padilla__ announced a new rule that is inapplicable to Grullon's case.

### A.    The __Padilla__ Rule is a New Rule

The issue under __Strickland__'s first prong is whether counsel's representation fell below an "objective standard of reasonableness" under "prevailing professional norms." __Strickland__, 466 U.S. at 687-88.  In 2001, the Second Circuit held that the first prong of the __Strickland__ test is met where there is "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea."  __United States__ v. __Couto__, 311 F.3d 179, 188 (2d Cir. 2002).  In __Padilla__, decided long after Petitioner's plea, the Supreme Court went further, reasoning that "there is no relevant difference between an act of commission and an act of omission in this context."  130 S. Ct. at 1484.  The Supreme Court held that, at least where the "terms of the relevant immigration statute are succinct, clear,

16

and explicit in defining the removal consequence[s] for . . .
conviction," constitutionally competent counsel must advise a
defendant that his conviction makes him subject to deportation.
Id. at 1483.

Accordingly, Padilla announced what the Supreme Court
has termed a "new rule": a rule that "breaks new ground or
imposes a new obligation on the States or the Federal
Government." Teague v. Lane, 489 U.S. 288, 301 (1989); see
United States v. Mathur, 685 F.3d 396, 401 (4th Cir. 2012)
(holding that Padilla announced a new rule inapplicable to cases
on collateral review); United States v. Amer, 681 F.3d 211, 213-
14 (5th Cir. 2012) (same); United States v. Chang Hong, 671 F.3d
1147, 1153-59 (10th Cir. 2011) (same); Chaidez v. United States,
655 F.3d 684, 687-88 (7th Cir. 2011) (same), cert. granted, 80
U.S.L.W. 3429 (U.S. Apr. 30, 2012); but see United States v.
Orocio, 645 F.3d 630, 641 (3d Cir. 2011) (holding that Padilla
clarified an old rule and is therefore retroactive).[4]

Moreover, the Padilla rule was not so "dictated" by
precedent in effect when Grullon's conviction became final that
it "was apparent to all reasonable jurists." Beard v. Banks,

---

[4] The Second Circuit has yet to decide whether Padilla announced a new
rule. The sole circuit court to have concluded that it does not is
the Third Circuit. See United States v. Orocio, 645 F.3d 630, 641 (3d
Cir. 2011). The Supreme Court recently granted certiorari in Chaidez
to address whether Padilla applies retroactively. For the reasons set
forth in the text, this Court should reject the Third Circuit's
reasoning in Orocio.

17

542 U.S. 406, 413 (2004) (citation omitted); Teague, 489 U.S. at
310.  To the contrary, as noted, the Second Circuit had rejected
the rule.  See Couto, 311 F.3d at 187.  And the divergent
viewpoints on display within the various Padilla opinions
themselves demonstrate that reasonable jurists could disagree
about what the Supreme Court's precedents required.  See O'Dell
v. Netherland, 521 U.S. 151, 159-60 (1997) (acknowledging that
such divergence of viewpoints is relevant in assessing whether a
rule is a new one).  In Padilla, the two concurring Justices
disagreed with the majority's requirement that defense counsel
"attempt to explain" the immigration consequences of a plea when
the law is "succinct and straightforward."  130 S. Ct. at 1487
(Alito, J., joined by Roberts, C.J., concurring in the
judgment).  The concurring Justices would have limited the Sixth
Amendment duty to refraining from "unreasonably providing
incorrect advice," id., and advising the defendant that "a
conviction may have adverse immigration consequences and that,
if the alien wants advice on this issue, the alien should
consult an immigration attorney."  Id.  The dissenting Justices,
moreover, would have held that the Sixth Amendment did not
impose any obligation to provide advice (competent or not) about
immigration consequences.  Id. at 1494-97 (Scalia, J., joined by
Thomas, J., dissenting).

18

**B.   <u>Padilla</u>'s New Rule is Not Retroactive**

New rules of criminal procedure, like the rule announced in <u>Padilla</u>, "'are generally not applied retroactively on [collateral] review.'" <u>United States</u> v. <u>Mandanici</u>, 205 F.3d 519, 527 (2d Cir.) (quoting <u>United States</u> v. <u>Bilzerian</u>, 127 F.3d 237, 240 (2d Cir. 1997)); <u>see also</u> <u>Stringer</u> v. <u>Black</u>, 503 U.S. 222, 227-29 (1992) (extending <u>Teague</u> to novel applications of old rules).  There are only two narrow exceptions to this general principle, and neither applies here.

The first exception permits the retroactive application of a new rule if the rule "place[s] an entire category of primary conduct beyond the reach of the criminal law, or . . . prohibit[s] imposition of a certain type of punishment for a class of defendants because of their status or offense." <u>Sawyer</u> v. <u>Smith</u>, 497 U.S. 227, 241 (1990).  <u>Padilla</u> did not "alter[] the range of conduct or the class of persons that the law punishes." <u>See</u> <u>Schriro</u> v. <u>Summerlin</u>, 542 U.S. 348, 351-52 (2004).  Accordingly, the first <u>Teague</u> exception is inapplicable.

Nor is <u>Padilla</u> within the second <u>Teague</u> exception, which applies to new "watershed rules of criminal procedure" that are necessary to the fundamental fairness and accuracy of the criminal proceeding. <u>Teague</u>, 489 U.S. at 311-13; <u>see also</u>

19

<u>Sawyer</u>, 497 U.S. at 241-42.  As the Second Circuit has noted, the second <u>Teague</u> exception to non-retroactivity "is exceedingly narrow, applying 'only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty.'"  <u>Mandanici</u>, 205 F.3d at 528 (quoting <u>Graham</u> v. <u>Collins</u>, 506 U.S. 461, 478 (1993)).  To fit within the "watershed" exception, it is not enough that a new rule "is aimed at improving the accuracy of trial," <u>Sawyer</u>, 497 U.S. at 242, or even that it promotes "[t]he objectives of fairness and accuracy," <u>Saffle</u> v. <u>Parks</u>, 494 U.S. 484, 495 (1990).  Rather, the rule must also "'alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding." <u>Sawyer</u>, 497 U.S. at 242 (quoting <u>Mackey</u> v. <u>United States</u>, 401 U.S. 667, 693 (1971)); <u>see also</u> <u>Bousley</u> v. <u>United States</u>, 523 U.S. 614, 620 (1998) ("[U]nless a new rule of criminal procedure is of such a nature that 'without [it] the likelihood of an accurate conviction is seriously diminished,' there is no reason to apply the rule retroactively on habeas review." (quoting <u>Teague</u>, 489 U.S. at 313)).

Measured against these standards, the new rule announced in <u>Padilla</u> — that the failure to advise about the deportation consequences of a plea constitutes ineffective assistance of counsel — falls far short of constituting a "watershed rule"

necessary to the "fundamental fairness and accuracy of the criminal proceeding." O'Dell v. Netherland, 521 U.S. 151, 167 (1997).  It therefore does not apply to Grullon's case, and Grullon cannot make out a claim of ineffective assistance under the Sixth Amendment.

**CONCLUSION**

For the foregoing reasons, the petition for writ of error coram nobis should be denied with prejudice.

Dated:     New York, New York
           September 17, 2012

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

                    By:    _____/s/_____
                              Alvin Bragg
                              Assistant United States Attorney
                              One St. Andrew's Plaza
                              New York, New York 10007
                              Tel. No.: (212) 637-1085